Good morning, Your Honors. May it please the Court, my name is Mara Boundy and I am Kelly Matayoshi, our student counsel for the petitioner, Mr. Eriberto Errera. Are you planning to share argument? No, Your Honor. So you'll be making all of the argument? Yes, Your Honor. Did you want to reserve any time for rebuttal? Yes, Your Honor. Three minutes, if possible. All right. Thank you. Thank you. You may proceed. Your Honors, this Court is currently reviewing Garfias-Rodriguez v. Holder en banc. And so this panel should not decide Mr. Errera's case until the Court decides Garfias-Rodriguez because the en banc panel's analysis will affect the application of this Court's holdings in Duran-Gonzalez v. DHS and Morales-Escuerdo v. DHS. Specifically, in his March 12th order, Judge Kaczynski asked the parties in Garfias-Rodriguez to address in their briefs whether Morales-Escuerdo should be overruled. And because this Court's 2011 decision in Duran-Gonzalez relies on Morales-Escuerdo for the premise that Gonzalez applies retroactively, this Court should stay its decision pending the en banc panel's conclusions on the future application of Morales-Escuerdo. Nevertheless, if this Court concludes that Garfias-Rodriguez has no impact, it should still grant the petition and reinstate Mr. Errera's adjustment of status because the government did violate his right to due process in the immigration proceedings below. It seems to me, if we just go back to one of the things that I'm struggling with, I understand what your arguments are. And first, you attack the motion for reconsideration, which the government lost, and then it goes in front of the BIA. And then the BIA remanded it sua sponte, essentially on its own, because it felt that the record needed some development before they could decide the case. So if, I mean, you won the motion for reconsideration, then the BIA, you would then have to prevail and show that the BIA does not have the authority to remand something for development in the record, which seems to be a difficult uphill battle in that that occurs all the time. But that being said, in trying to unwind all of this, it seems that at the bottom of all of this, your client came in, went before an IJ, got sent back, they didn't check the box, and then he went, he was removed, went left, and then was back three days later. And so you claim all these other things, but it seems he'll never be entitled to relief if he was removed on that day. And so everything is structured around trying to say, well, because they shouldn't have filed the motion for reconsideration, we should win. Because the BIA shouldn't have remanded it, sua sponte, we should win. But the reality of everything is, if he's removed, what relief would he be entitled to any relief? Your Honor, Mr. ---- I mean, you have to win on all of those issues sort of procedurally, because the elephant in the room is he was removed and he came back three days later, and that would make him ineligible for relief. To clarify, Your Honor, the motion to reconsider did have an effect in this case because it was the denial of that motion that the government appealed to the BIA. And in its grant of remand, it explicitly, the BIA explicitly references the government's appeal and notes that although there is no evidence in the record of the immigration action taken in 2003, that the government alleges that he was removed in 2003. Well, but it seems like you have to be successful in keeping out the truth to make him eligible. Because if the truth, if they're allowed to get any evidence that he was removed, he's not entitled to relief. Am I right? No, Your Honor. That is not the case, because under the controlling precedent of this circuit, when Mr. Herrera applied for and was granted an adjustment of status, he was eligible for it. Perez-Gonzalez v. Ashcroft states that an alien previously removed may apply for a 212 waiver and an adjustment of status. So the IJA's adjudication on the merits was proper. The government essentially got lucky in that the law did change, and so the BIA's remand was proper. Had it not been, had the law not changed, the remand would not have been proper because the evidence presented to it on appeal would have been previously admissible, and that would violate Regulation 8 CFR 1003.23b3. But furthermore, Your Honors, because the agency interpretation of Section 1182A9Ci subsection 2, which was adjudicated in In re Terez-Garcia, did not apply to Mr. Herrera at the initial hearing, neither should this Court's decision in Gonzalez. And this is precisely the issue before the Court in Garfias-Rodriguez v. Holder in the en banc rehearing. Both Duran-Gonzalez, the 2011 decision, and Garfias-Rodriguez v. Holder. Is that Garfias-Rodriguez or Garcia-Rodriguez? Garfias. Okay. Excuse me. G-A-R-F-I-A-S. Both of those decisions rely on the retroactivity analysis in Morales-Esquerdo in finding that the new interpretation by an agency can apply retroactively. And both of those cases involve the interpretation of an ambiguous statute, Section 1182A9Ci subsection 1 in Garfias, subsection 2 in Mr. Herrera's case. Now, in Acosta v. Gonzalez, this Court noted that there was no evidence that Congress intended these two subsections of aliens to be treated differently. And so there is an indication that Mr. Herrera's petition is inextricably tied with the Court's conclusions in Garfias-Rodriguez, because it will be considering the future application of Morales-Esquerdo. But basically, you apply the law that's in effect at the time. And so in order for you to get back there, you've got to find that they shouldn't have denied the motion for it to reconsider, they shouldn't have sui sponte. So you're trying to get back, like you want a whole new clean slate with all the law that you think is beneficial to you, right? No, Your Honor. At the time that Mr. Herrera obtained this relief, the law allowed for it. And the new interpretation should not have applied retroactively to him. The retroactivity analysis in Morales-Esquerdo does not address the situation here or the situation in Garfias-Rodriguez. It paints with too broad a brush. In both of those cases, there was controlling precedent. In Mr. Herrera's case, Perez-Gonzalez v. Ashcroft. In Mr. Garfias-Rodriguez's case, Acosta v. Gonzalez. The agency, through an adjudicative process, reinterpreted in an entirely different way the applicable section of the statute. Now, under the Supreme Court's precedent in SEC v. Chenry and NLRB v. Bell Aerospace, as well as Heckler v. Community Health Services, when an agency applies or creates new rule through adjudication, that may not have retroactive effect where parties will suffer adverse consequences and where they will stand to be forced to impose new liability for their past actions on these parties. And that is exactly what's happening here. And the Morales-Esquerdo retroactivity analysis does not take into account that although an agency's interpretation may be reasonable under Chevron and Brand X, it does not cure the issues of fairness and reliance. But it seems to me that you're arguing that because the government's improper motion postponed its appeal to the BIA until after the Ninth Circuit decided to round Gonzalez, this panel should order the BIA to review Herrera's case as if Duran-Gonzalez had never been issued. You know, what authority do you cite for such an extraordinary remedy? To be clear, Your Honor, there are two different grounds by which this panel could grant relief. First, it could stay its decision pending the en banc panel's review in Garcias-Rodriguez to better understand the implications of Morales-Esquerdo and whether these cases can indeed apply retroactively. Or it can look only at the violation of due process. The motion to reconsider was improper. The evidence the government sought to introduce after the IJ adjudicated Mr. Herrera's claim does not fit the requirements of a motion to reconsider or a motion to reopen. And the BIA notes at page 138 that there is not sufficient evidence in the record to determine the immigration action taken. So the fact that the government is referencing in its motion to reconsider on page 395 and its appeal to the BIA a February 20, 2003, removal is additional evidence. And this Court in Ramirez-Alejandro v. Ashcroft held that a violation of the procedural rules in an immigration hearing is a violation of due process. What's your best authority that the BIA couldn't sui sponte, send it back, and then that evidence is admissible at that point for clarification? The government is, excuse me, the BIA is allowed to remand when there is a change in law, but the grounds for remand are very similar to a motion to reopen. And this evidence could have been presented at the initial hearing. So if Gonzalez should not apply to Mr. Herrera, which Petitioner argues it does, the remand itself was not proper. And even if the government could have simply appealed to the BIA and the BIA could have granted remand, that's simply not what happened. There was a procedural violation, and this Court should not overlook it. And as I understand it, when the government appealed it, they never moved for a remand, which they could have under the CFR 8103.1d3, Roman numeral 4. They never did that. And following up on Judge Callahan's question, where is the independent authority of the Board to issue a sua sponte remand? In the BIA's decision in Re. S.H., the BIA goes through the new 2002 Attorney General's rules on the BIA's review of fact, and it notes that when there is a change in law, the BIA may be able to remand for further fact-finding. Although Your Honor is correct in noting that the government did not file a motion to remand, and that is because it could not. Under this Court's holding in Rodriguez v. INS, as well as Echurabarria v. INS, the requirements of a motion to reopen are the same as a motion to remand. And under 1003.323b3, a motion to reopen requires that the evidence could not have been discovered at the initial hearing and was previously unavailable. It contemplates new facts, new circumstances. The evidence here was a 3-year-old removal order that the government filed. If the government couldn't file a motion to remand and they didn't file a motion to remand, how can we fault the government for not filing something they shouldn't have filed? We're not, Your Honor. We're simply noting that this evidence could have been presented at the initial hearing, and indeed, if it had been, there would have been a legal conclusion by the IJ on this specific point, and under the controlling circuit precedent, the order adjusting his status would have stood. Your position is that the BIA exceeded its authority and was abusing its discretion when it remanded? No, Your Honor. Under NRAI-SH, when there is a change in law, remand is acceptable. But had there not been a change in law, it would have been unacceptable. Well, counsel, I want to clarify something. The government could have filed the motion for remand. It's just that they would have lost because the evidence wasn't newly discovered. They knew about it or should have known about it at the time, and it existed at the time. It's not that they were procedurally barred from filing the motion. The CFR I cited earlier clearly indicates that either party can file a motion for remand. So you're not saying that they couldn't. You're just saying it would have been futile because it's evidence that they should have produced at the underlying hearing. It would have been an improper motion, and it would have not followed the specific procedural rules of a motion to reopen or a motion to remand under the regulations. Do you want to reserve the balance of your time? Yes, Your Honor. Thank you. Thank you. Good morning. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I think the Court has already honed in on the important part of this case. I see two parts going on. One is how this Court should handle this case in light of Garfias, Rodriguez, and also what to make of the procedural history of this. I see the Court didn't ask about the equitable estoppel claim, and I'm happy to address that, which was mentioned as something that should be addressed in the briefs, and I know that it was. And I can also get to that, but I'll focus first on what the Court has already identified as the main issues in this case. I want to start with the procedural history of this case before we get to Garfias, because I think the procedural history informs whether or not Garfias applies, just as that's going to be my argument. Procedural history is very important. In this case, what we have is, of course, a change of the law while this is going on, and, of course, as we're seeing right now, there's possibly a change in the law. Give me some dates, would you please? Yes. I'm going to give you some very important dates. Perez-Gonzalez was decided in August 13, 2004, okay? And at the time, what Perez-Gonzalez said was that it specifically said there was no agency elaboration of the interpretation of 212A9 and Regulation 212.2. The Court didn't know what to make of the fact that the statute had changed to include 212A9 for recidivist immigration violators, such as Mr. Herrera in this case, that is, people who have already been ordered removed and continue to violate the laws of the United States, so-called recidivist statute. Now, there was a regulation at 212.2 that was not amended, even though the statute was amended. Now, this created a problem because the regulation indicated that someone like Herrera could potentially come in and file a Form I-212 waiver prior to any reinstatement action and that you could get sort of what they called nunk-pro-tunk eligibility for relief. Now, the Court and Perez-Gonzalez specifically said that the agency hasn't weighed in on this and we're going to go ahead and make the best of what we've got here, but it invited the agency to create an interpretation on this. So I want to start by saying reliance on Perez-Gonzalez is in and of itself wrong in the first place, knowing that there could be an agency interpretation, which there was, that's going to come along and properly explain how this regulation is going to interplay with the statute. Which brings me to my next date, which is January 26, 2006. Therese Garcia was issued on January 26, 2006, and that basically clarified the situation overruling this Court's interpretation in Perez-Gonzalez. Now, notably, in January 2006, I'm going to come back. Mr. Herrera was in proceedings at that point, okay, and he's before the immigration judge in August 2006 after Torres-Garcia had already been decided and he's claiming eligibility for adjustment. Now, the problem is that the government at the time before the immigration judge did not acknowledge the Board's decision in Torres-Garcia. That was wrong and the government should have brought that up. The government should have never allowed the immigration judge to say, well, Acosta and Perez-Gonzalez take care of the unlawful presence issue. It didn't. It didn't at the time that the immigration judge granted the adjustment application. It was wrong right then and there. But, see, this is why we have an appeal process, and this is why it was very important that the Board have a chance to correct this. And when DHS, I understand DHS filed a motion, again, the motion was not making the correct argument. The correct argument was Torres-Garcia at that time. What DHS argued was Fernandez-Vargas, the Supreme Court decision, which was actually brought up in the first Duran-Gonzalez 2007 decision. The same argument was presented about whether Fernandez-Vargas undermined Perez-Gonzalez, and that's because of the reinstatement, the idea that reinstatement precludes eligibility for adjustment. And so they were saying that Fernandez-Vargas undermined Perez-Gonzalez. Well, the obvious argument was Torres-Garcia undermined Perez-Gonzalez. They didn't make that argument. That was wrong. That wasn't their best argument. And the immigration judge rejected it. And so there was no harm done in that sense, whether you want to call it a motion to reconsider, a motion to reopen. I argued in the brief that it's a little bit irrelevant. But just to be clear, no new evidence was brought in on that motion with DHS. There was actually no need for the DHS to produce evidence of Mr. Herrera's prior removal in 2003. Why? Mr. Herrera himself had already presented evidence himself in the record that was indicating his prior removal. There are actually three places in the record that this is even prior to the DHS submitting everything where you know that Mr. Herrera had something happen to him in February 2003. First, he testified to it. Now, it wasn't clear, and this is on page 289 to 90 in the record. We know that something happened where he was ordered removed or appeared before an immigration judge. It was a little fuzzy. Now we also know that he filed a Form I-212 waiver. Of course it's going to be in there. That's the whole reason why an alien files a Form I-212 waiver. And that's going to bring me back to my equitable estoppel argument later, because obviously you know you did something wrong. You know you came back in illegally, and that's why you're filing the Form I-212 waiver. This was in the record from the very beginning. It was completed in May 2006. It was before the immigration judge. There was already evidence of his prior unlawful reentry. And the other place, of course, is similarly in his adjustment application, which is on page 416. It asked him, have you ever been deported? And he checked off yes. Now, what I want to make clear is that the board, the reason why I think the board actually remanded in this case for the clarification, arguably there isn't a need for clarification. As I just pointed out, it's pretty clear he was deported based on his own admissions in the record. But it wasn't clear to the immigration judge. It wasn't clear, exactly. And the immigration judge made a comment in his decision about how it wasn't clear to him. And, in fact, if you also look at the record in the closing statement part, the closing statements given by Mr. Herrera's counsel and the government attorney are on page 315 and 316 in the record. And his attorney was refusing to admit whether it was a voluntary departure or a deportation. And then the immigration judge said something, well, I think there's something called quick courts. We're never quite sure whether it's a voluntary departure or a deportation. And so the immigration judge wasn't willing to commit in his decision whether or not there was a deportation. That's why the board remanded. The board could have used the evidence in the record, but because in an abundance of caution saw the immigration judge didn't make a factual finding in that regard, the board isn't capable of making factual findings in the first instance. The board, however, has de novo review over the immigration judge's decision. Now, what I want to make clear. Counsel, can I ask you, where's the authority for the board to do a sua sponte remand like they did in this case? I'm trying to think of the regulation. I think it's 1003.2, something along those lines, where the board can sua sponte. It means on its own motion remand. The board does it a lot. The board can do it at any time. No party has to ask for it or a party can ask for it. It's on its own motion. And if they have that authority, doesn't the petitioner's due process argument kind of fall by the wayside? Well, that's our argument, Your Honor. Our argument is first that there aren't a whole lot of procedural improprieties in the first place because what the DHS did in filing that motion to reconsider, it really was a motion to reconsider in the end because it was asking the judge to reconsider the Perez-Gonzalez availability to cure the inadmissibility. It really was. It wasn't submitting new evidence at that time. The DHS did not submit the information, and I'm talking about the IJ's removal order from 2003, the Form I-213, Record of Inadmissibility. Those other pieces of evidence came in pursuant to the board's remand. That was all properly done because at that point the board had reopened for new evidence. When the DHS filed their motion to reconsider, there wasn't any new evidence. There was a new argument in the sense that Fernandez-Vargas, as I mentioned, a Supreme Court decision that had just been decided, came in and undermined Perez-Gonzalez. There wasn't new evidence put in at that time. So they're arguing a lot about how the DHS brought in all this evidence. They didn't. The evidence was in the record, as I've already mentioned, from Mr. Herrera himself, and the evidence was not brought in by the DHS until after the board's remand, and that is when the DHS produced the evidence. And the DHS was only confirming what was already in the record. And then, of course, what happened was the immigration judge recognized at that point that there had been a change in the law not only by the board but also by this court. And, Judge Callahan, I know you authored the decisions in Duran-Gonzalez, both of them at this point, 2007 and 2011, and so I know that you're quite familiar with everything that has gone on. But just to briefly explain for everyone else, Duran-Gonzalez used Brand X Chevron deference to the board's decision in Torres-Garcia and abrogated Perez-Gonzalez at that time. Now, what's interesting is that Garfias-Rodriguez, remember I mentioned that they're recidivist violators, and there's two ways, basically, that you can be a recidivist violator. Mr. Herrera was a recidivist violator for a reentry after a deportation. The other way is an unlawful presence after an order of removal. And so Mr. Garfias-Rodriguez falls under that one. Now, it's almost parallel cases, but the only difference is that there are two recidivist violations and one set of cases deals with one and the other set of cases deal with the other, but they're very much analogous to each other in the sense of there was a court decision, then there was an agency decision that was going contrary to the court decision, and then there was another court decision giving brand X Chevron deference to the new agency decision in both cases. They happen in parallel fashion that way. However, there are very important differences between the two lines of cases, and that is going to bring me to my argument now as to why the Garfias-Rodriguez situation is not necessarily dispositive of this case. Now, it is currently being considered. There is en banc rehearing that will be taking place in that case. What's interesting is that it is actual rehearing of a case so that Mr. Garfias-Rodriguez is still having his case heard, unlike its parallel decision, Duran-Gonzalez, which there was a decision already applying the rule to those litigants. It was a class of litigants. It's been final, and it's not, although when the court goes en banc, it can revisit other precedent. Yes, Your Honor. And so what's actually more relevant to this Court is whether or not Duran-Gonzalez, 2011, is reconsidered en banc, which the Court has not yet. My last look at the docket showed that the government's response to the petitioner's request for rehearing was that they were eliciting a response from the government, but that it has not been granted yet. And I hope the Court received my 28-J letter about this, and that is the government's position, is that if Duran-Gonzalez, 2011, Duran-Gonzalez III, if that were to be reconsidered, that would be the case that has the direct bearing on this case, rather than the Garfias-Rodriguez, because in that case there has not already been, as there is in this case, another panel decision already upholding the Garfias-Rodriguez. And it's key, because the Morales-Izquierdo case is key. And if for some reason that does get undermined or overruled, the problem is that it already relied on Duran-Gonzalez in this case. And this panel doesn't have the authority, of course, to overturn another panel's decision. It has to be done in bank, which is what is going on now with the rehearing in bank for Garfias-Rodriguez and potentially in Duran-Gonzalez, 2011. And so, but arguably, and of course the government's position is going to be that the prospectivity test in Chevron Oil shouldn't apply in this case, and that will be the position in the in-bank rehearing, because in this case, I mean, in Nunez-Reyes, it's very materially distinguishable, and I don't want to go down, you know, too far into that, because I know that the court will be hearing that separately in a different case. But the government's position is that the prospectivity test doesn't apply in a situation like this, where the court isn't correcting itself. In Nunez-Reyes, it was overruling Lujan Armendariz, and it had nothing to do with admissibility. It had to do with the Federal First Offender Act, and it had to do with something entirely separate. But what it had to do with was a reliance interest. People who had relied on the ability of expungement to have no criminal consequences and, in the process, gave up their constitutional rights in that sense. In this case, there are no ‑‑ Let me just ask you this. Yes. I know that because we don't have a lot of time left. Yes, Your Honor. And I asked appellant's counsel about this. In your view, what would this court have to do for Mr. Herrera to be entitled to any relief? I'm trying to find some way that he would be ‑‑ you know, what would have to happen before he would be entitled to any relief? Because it still seems like his deportation is a problem. What Mr. Herrera needs to do to get relief is leave the United States for 10 years and seek readmission. Well, but in this case, what would this court have to say that would put him ‑‑ The court can't say anything, Your Honor. And that's because ‑‑ and there's a U.S. Supreme Court decision, INS v. Pandolino, and it was actually very similar, where basically the person was saying, I'm not entitled to my green card, but I should get one anyway. And that's basically the bottom line. This is INS v. Pandolino, and it's a Supreme Court decision. But that's the idea. At bottom, he's asking this court to remand to reinstate relief that he's not entitled to. And the fact is in De Palacios Carrillo, which was decided also since the government filed its brief in December 2011, but I cited it in the 28Js just to point out, I see my time is running out, but it makes clear 10 years outside of the United States. If he had remained outside the United States next year, he would have been able to reapply for admission in 2013 as he was removed in 2003. As it stands, he's been here. Mr. Harris, Judge Bennett has a question. I do have a question. You know, it strikes me as odd that the board doesn't have authority to do the remand. But when I read the briefs and all the CFRs, I couldn't find it. There's nothing in the briefs that indicate the board has that authority. And so I'm wondering, if I were to conclude that the board didn't have the authority, what would the remedy be? Well, the board did have the authority. I'm not sure why you think the board didn't. Because you didn't indicate in your brief. And, as a matter of fact, you blew right by the issue. You never even addressed the issue in your brief. That's why.  I don't know. Conclusions of the immigration judge? Yeah, but if you read CFR 103, 1.D34, there's an arguable construction that the party has to request it. At least that CFR doesn't indicate the board. But let's just assume. Just assume. I know you can't accept it. But just assume in your wildest imagination that I might disagree with the government's position and say there was a procedural violation here because you didn't follow your own rules. What would the remedy be? Well, what would have happened is, suppose he had gotten the adjustment and the board hadn't done that. The government would have rescinded the adjustment under, I believe it's 246A, when you have a five-year statute of limitations. He would have received relief that he was not lawfully entitled to. The government simply would have rescinded it. So, in the end, he wouldn't have gotten that relief. The board, though, has the authority to sui sponte. I'll accept your argument just for argument's sake. But the board does have sui sponte to reopen at any time, regardless of whether anyone has made a motion to or not. All right. I think we're over our time. Thank you. Thank you, Your Honors. Proceed, please. Just a few points. The panel asked what sort of relief it could grant Mr. Herrera. The first form is merely a stay of its decision pending the en banc panel's review in Garfias-Rodriguez. Morales-Escuero is central to this Court's decision in 2011 in Duran-Gonzalez in finding that that new interpretation of the law applies retroactively. And if Morales-Escuero crumbles or if it is interpreted differently, Mr. Herrera is and was entitled to relief in 2006 under Perez-Gonzalez. The government errs in asserting that it was not the applicable law at that time. Perez-Gonzalez states explicitly that it is not giving Chevron deference at that time, although Gonzalez has taken a different direction since. At the time the IJ adjudicated Mr. Herrera's claim, it was controlling and he was eligible. The second way this Court could grant relief is to recognize that there were procedural improprieties and that that should constitute a sufficient enough violation to reinstate the relief he was eligible for, sought, and was granted. The Eighth Circuit considered a situation analogous to Mr. Herrera's that is very helpful to this panel. The Ivanoff case? Yes, the Ivanoff case, where an improper motion to reopen filed by DHS was grounds for a vacation of the order granting reopen and a reinstatement of asylum. Thank you, Your Honors. All right. Thank you both. This matter will stand submitted. I would like to compliment both sides. This is a procedurally very complicated case, and I think that you both did an excellent job. And I would certainly, you know, I think as a law student, I'm pleased to say that you've practiced at the level that we expect of all our experienced lawyers, and you both did an excellent job. Thank you. This matter will stand submitted.
judges: Bennett, Callahan, Bea